IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs June 25, 2019

## STATE OF TENNESSEE v. DANNY D. KEEN

**Appeal from the Criminal Court for Wilson County**
**No. 16-CR-429        Brody N. Kane, Judge**

_____

### No. M2018-01152-CCA-R3-CD

_____

A Wilson County jury convicted the defendant, Danny D. Keen, of aggravated robbery, and the trial court imposed a sentence of eight years in confinement. On appeal, the defendant challenges the sufficiency of the evidence to support his conviction. After reviewing the record and considering the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Shelley Thompson, District Public Defender; Kelly A. Skeen, Assistant Public Defender, for the appellant, Danny D. Keen.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Tom Swink and Justin Harris, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

On February 23, 2016, Christin Davis was working as the chief pharmacist at the Walgreens located at 1303 West Main Street in Lebanon, Tennessee with Morgan Smith, a pharmacy technician, and Kristi Tinsbloom, a staff pharmacist. Ms. Davis was on the phone when the defendant initially approached the consultation window. After Ms. Davis ended the phone call, the defendant told her that he "need[ed] some help" and demanded oxycontin. With his right hand in his pocket, the defendant threatened to

"blow [her] brains out" if she "push[ed] any buttons or pick[ed] up any phones." The defendant shook his hand while it was in his pocket, and Ms. Davis believed he had a weapon. Fearing for her life and the lives of her staff, Ms. Davis decided to stay calm and comply with the defendant's demands.

The defendant climbed through the consultation window and asked where the safe was. Ms. Davis led the defendant to the safe, opened it, and "stepped back" while the defendant took a bottle of 80-milligram oxycontin. Ms. Davis estimated the street value of the bottle was over $1,000. The defendant walked back to the consultation window and took two tablets from the bottle. He asked Ms. Davis for some water, and, after taking a drink, refused to give it back, telling Ms. Davis he had "Hep-C" and was "sick." Following the robbery, the defendant remained behind the counter, talking with the staff. During this time, the defendant again threatened to "blow their brains out" if they "push[ed] any buttons." However, he also told them "he didn't want to hurt anybody." The defendant continued taking oxycontin, consuming a total of five tablets, which Ms. Davis considered a "potentially [] fatal dose."

Scott Stidham took his mother to Walgreens that afternoon to pick up her prescriptions. He saw the defendant "hop[] the counter" and knew "something didn't seem right." Although Mr. Stidham could not hear what was being said in the pharmacy area, he saw "a look of concern" on Ms. Davis's face and decided to call 911.

Officer William Kennedy with the Lebanon Police Department was the first officer to respond to Mr. Stidham's 911 call. When he arrived at the pharmacy, Officer Kennedy saw the defendant sitting on the counter inside the pharmacy. As Officer Kennedy approached the consultation window, the defendant reached out to grab Ms. Davis. However, Ms. Davis was able to move out of the way and exit the pharmacy. When Officer Kennedy entered the pharmacy, the defendant was hiding behind some shelving. Officer Kennedy drew his weapon and ordered the defendant to come out, but the defendant refused to comply. After "several commands," the defendant emerged from behind the shelving and complied with Officer Kennedy's demands. Upon searching the defendant, Officer Kennedy did not recover a weapon of any kind.

At trial, the State called Christin Davis, Morgan Smith, Kristi Tinsbloom, Scott Stidham, Officer William Kennedy, and Officer Dan Sandefur as witnesses, and all rendered testimony consistent with the foregoing. In addition, the State submitted footage of the robbery taken from the surveillance camera in the pharmacy. On cross-examination, Christin Davis admitted her statement to police did not include all of the details in her testimony. However, after police arrested the defendant, she had to continue working because several customers were still waiting at the pharmacy. She wrote her statement while assisting customers and "was still very shaken up."

The defendant testified on his own behalf, asserting he did not intend to hurt anyone during the robbery. He had recently been kicked out of a halfway house for drinking alcohol and was "freezing to death." The defendant decided to rob the pharmacy so he could go to jail and "get out of the cold." He insisted he did not have a weapon that day and did not act as if he had a weapon. The defendant also stated he had "a reflex of putting [his] hands in [his] pockets" and did not do so to scare the pharmacist. On cross-examination, the defendant admitted he demanded pills from the pharmacist. Although he did not recall telling the pharmacy staff that he would "blow their brains out," the defendant admitted, "I ain't saying I didn't say it."

Following deliberations, the jury found the defendant guilty of aggravated robbery. The trial court subsequently sentenced the defendant to eight years confinement. The defendant filed a motion for new trial in which he argued the evidence at trial was insufficient to support the jury's verdict. The trial court denied the motion, and this timely appeal followed.

*Analysis*

The defendant's sole issue on appeal is the sufficiency of the evidence to support his aggravated robbery conviction. The State contends the evidence is sufficient. We agree.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary

instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

As charged in this case, aggravated robbery is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a).

The defendant specifically contends the State failed to prove he "displayed any article used to lead the victim to reasonably believe it to be a deadly weapon." The defendant asserts the surveillance video does not support Ms. Davis's testimony that the defendant had his hand in his pocket while speaking with her or that he shook his hand while in his pocket. He also argues he did not perform any overt gestures to imply he had a gun.

In reviewing several aggravated robbery cases in which the defendant did not display a weapon but had his hand in his pocket, this Court noted "the common threads running through all of the . . . cases on this issue are: 1) a hand concealed in an article of clothing; and 2) a threat -- express or implied -- that caused the victim to 'reasonably believe' the offender had a deadly weapon and was not opposed to using it." *State v. Monoleto D. Green*, No. M2003-02774-CCA-R3-CD, 2005 WL 1046800, at *10 (Tenn. Crim. App. May 5, 2005), *no perm. app. filed*. Additionally, "Tennessee law does not require the prosecution to prove a defendant made 'gestures' while his hand was in a pocket, or that he 'shaped' his hand in a manner that resembled a weapon before the elements of aggravated robbery are satisfied." *Id.* at *9.

Viewed in the light most favorable to the State, Ms. Davis testified she was on the phone when the defendant approached the consultation window. When she addressed him, the defendant, with his hand in his pocket, told Ms. Davis that she needed to give

- 4 -

him oxycontin. He also told Ms. Davis not to call police or push any buttons or else he would "blow [her] brains out." He shook his hand while it was in his pocket, and Ms. Davis believed he had a gun. Because she was afraid for her life and the lives of her staff, Ms. Davis complied with the defendant's demands. Ms. Davis led the defendant to the safe, where he took a bottle of 80-milligram oxycontin. While speaking with Ms. Davis and the pharmacy staff, the defendant swallowed five oxycontin tablets.

The jury was entitled to accredit the testimony of Ms. Davis. Considering the nature of the threats made to Ms. Davis and the pharmacy staff, the presence of the defendant's hand in his pocket was sufficient for a jury to conclude he displayed an article "fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1). Furthermore, the surveillance video of the robbery fully supports Ms. Davis's testimony. Based on the evidence, a rational jury could find aggravated robbery beyond a reasonable doubt. The defendant is not entitled to relief.

### *Conclusion*

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
J. ROSS DYER, JUDGE